IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 04 C 8287 |
| v. | ) ) | |
| THE VILLAGE OF FRANKLIN PARK, | ) ) ) | HONORABLE DAVID H. COAR |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

St. Paul Fire and Marine Insurance Company ("St. Paul") seeks a declaratory judgment that it has no duty to defend its insured, the Village of Franklin Park ("the Village"), against an Illinois state court lawsuit alleging that the Village underfunded the Franklin Park Firefighters' Pension Fund ("the Fund"). The Village counterclaimed, alleging breach of contract, seeking a declaratory judgment that St Paul has a duty to defend, and seeking attorney's fees and costs under § 155 of the Illinois Insurance Code. 215 Ill. Comp. Stat. 5/155 (2003). The parties have cross-moved for summary judgment and those motions are fully briefed and now before this Court.

**BACKGROUND FACTS**

St Paul issued two liability insurance policies to the Village ("the St Paul Policies"). The first one, Policy Number GP09304033, was in effect from February 1, 2001 until February 1, 2002, and provided a limit of $2 million for each wrongful act for the Employee Benefit Plans

-1-

Administration Liability Protection Coverage. The second policy, Policy Number GP09307222, was in effect from February 1, 2002 until February 1, 2003, and provided substantially the same coverage.

Plaintiffs in the Underlying Litigation in state court, Steven Iovinelli and William Horn, are firefighters for the Village and serve as trustees of the Fund. Under Article 4 of the Illinois Pension Code, 40 Ill. Comp. Stat. 5/4-101 *et seq.*, as amended, the Village is required to levy taxes and contribute to the Fund an annual amount that, when added to firefighter contributions and monies raised from other sources, is sufficient to meet the Fund's actuarial requirements as determined under state law. Some time after May 24, 1999, Iovinelli and Horn allege that they discovered that the Village owed the Fund over $1 million for fiscal year 1997. They contend that they sought to put the matter of possible legal action against the Village to recover the monies owed on the Pension Board agenda on several occasions after May 24, 1999. The Village attorney, however, objected, and legal action was never put on the Board's agenda. On or about August 21, 2000, the Underlying Plaintiffs allegedly made a written demand on the Village to pay $4 million to the Fund out of a $14 million surplus collected from the Municipal Utility User Tax. The Village paid $133,529.41 to the Fund on November 21, 2000.

On January 30, 2002, Iovinelli and Horn filed a class action complaint against the Village on behalf of themselves and the beneficiaries of the Fund. The Village tendered the complaint to St. Paul on February 21, 2002. St. Paul initially denied coverage by fax on March 8, 2002, followed by a detailed denial of coverage letter dated May 16, 2002. The Village sent a written objection on October 14, 2002. On January 17, 2003, the underlying plaintiffs filed a first amended verified complaint against the Village. The state court dismissed four counts of the first

amended complaint on November 3, 2003, but allowed the plaintiffs to replead three remaining counts. The state court's order stated that it only had authority to order an accounting; order the disgorgement of funds already collected by the Village as part of a pension levy; and order one year's interest on the levied funds that were not contributed to the Fund. On December 8, 2003, the plaintiffs filed a second amended verified complaint against the Village, seeking a declaratory judgment, a verified accounting, restitution, a permanent injunction against the Village, and attorney's fees and court costs. St. Paul sent a supplemental denial of coverage letter to the Village on July 23, 2004, demanding that the Village withdraw its tender of the underlying complaint. The Village did not respond. St. Paul filed the instant action for a declaratory judgment in this court on December 23, 2004.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in her favor. *See Haywood v. Lucent Technologies*, 323 F.3d 524 (7th Cir. 2003). A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989).

**ANALYSIS**

Under Illinois law, the interpretation of an insurance policy is a question of law. *Mank v. West Am. Ins. Co.*, 620 N.E.2d 6, 8 (Ill. App. Ct. 1990). When an insured tenders a claim to its insurer for defense, the insurer has essentially two options.[1] The insurer can defend its insured under a reservation of rights, such that it could recover from the insured if it later turns out that there was no duty to defend, or it can seek a declaratory judgment that it has no duty to defend. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999) (citations omitted). If, however, the insurer does neither and is later found to have wrongfully denied coverage, then the insurer is estopped from raising policy defenses to coverage. *Id*.

To determine whether an insurer has a duty to defend its insured, the court must look to the allegations of the underlying complaint. "If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991) (emphasis in original) (citing *Thornton v. Paul*, 384 N.E. 2d 335 (Ill. 1978)); *see also Roman Catholic Diocese of Springfield v. Maryland Casualty Co.*, 139 F.3d 561, 565 (7th Cir. 1998). Refusal to defend an insured is unjustified unless it is clear from the face of the underlying complaints that the allegations fail to state facts which would bring the claim or case within, or even potentially within, the policy's coverage.

---

[1] The Seventh Circuit has stated that there are three options, but Illinois case law consistently refers to two. *See, e.g., Roman Catholic Diocese of Springfield v. Maryland Cas. Co.*, 139 F.3d 561, 565-66 (7th Cir. 1998). *Cf. Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999). In any event, the third option identified by the Seventh Circuit is identical to the consequence of not choosing either of the two options identified by the Illinois courts. There is, thus, no material difference in the case law, despite the distinction in the descriptions used.

*Wilkin*, 578 N.E.2d at 930 (citing *Conway v. Country Casualty Ins. Co.*, 442 N.E.2d 245, 247 (Ill. 1982)). In addition, the duty to defend arises even if only one of several theories of recovery asserted against the insured falls within the potential coverage of the policy. *Id.* (citation omitted).

The court will liberally construe the underlying complaints and the insurance policies in favor of the insured. *Wilkin*, 578 N.E.2d at 930. When a policy provision is clear and unambiguous, its language shall be read in its "plain, ordinary and popular sense." *Id.* Ambiguous language must be resolved in favor of the insured. This Court now turns to the allegations of the underlying complaints and Plaintiff's insurance policies to determine whether the underlying complaints are covered or potentially covered by the policies.[2]

The underlying complaints were first filed in the Circuit Court of Cook County on January 30, 2002. The plaintiffs, firefighters employed by the Village, alleged that the Village continuously underfunded the Franklin Park Firefighters' Pension Fund. In their original and first and second amended complaints, the plaintiffs asserted that the Fund made a written demand on the Village on or about August 21, 2000, for a payment of $4 million out of a projected $14 million surplus in the Village's budget "in order to bring the Fund's funding level in line with current state averages for similarly-situated pension funds." (Underlying Compl. ¶ 42.) The original underlying complaint contended that making a demand on the Fund's board of trustees to take legal action against the Village to redress the alleged underfunding would be

---

[2] The Village has filed a motion to strike, seeking to strike portions of St. Paul's argument in support of its motion for summary judgment that refer to the Village's brief in the Underlying Litigation. For the reasons set forth below, this Court finds that St. Paul's arguments do fall within the exception to the rule limited a court's review to the allegations contained in the complaint. The motion to strike is therefore denied.

"futile" because the *ex officio* board members had failed or refused to authorize such legal action.[3] Their lawsuit sought a verified accounting of the Pension Fund dating to 1966; declaratory judgment under the Illinois Pension Code, 40 Ill. Comp. Stat. 5/1-110 *et seq*., and the Illinois Constitution of 1970; an injunction permanently restraining the Village from using funds collected for the Fund for any purpose other than those mandated by the Illinois Pension Code; and a judgment for restitution in favor of the Fund in the amount of total unpaid contributions and interest accrued. In addition, the plaintiffs sought attorney's fees and costs. This complaint was tendered by the Village to St Paul on February 21, 2002, during the effective period of GP09307222.

St. Paul contends that the Policies do not cover the underlying litigation because written demands relating to the matters involved in the underlying litigation were made on the Village prior to the inception of the Policies; the underlying plaintiffs do not seek "damages" for covered "loss" as defined in the Policies; the Village's acts were intentional, but the Policies only cover loss resulting from negligent acts; and the Village's acts were not merely administrative, as required for coverage under the Policies.

The Employee Benefits Plans Administration Liability Protection Claims-Made coverage of St. Paul's policy states:

---

[3] In their first amended verified complaint, the underlying plaintiffs amended their claims to state that "[o]n several occasion since [the] year 2000, Plaintiffs requested that the Pension Board put the matter of possible legal action against the Village for monies owed on the agenda. The Village attorney objected to such action against the Village being put on the agenda. The matter of possible legal action against the Village for monies owed was not put on the agenda." (Underlying First Amended Verified Compl. ¶¶ 37-39.) The second amended verified complaint modified that language, alleging that the underlying plaintiffs first requested the Pension Board put the matter of possible legal action against the Village to recover monies owed to the Fund on its agenda as of May 24, 1999. (Underlying Second Amended Verified Compl. ¶ 198.)

> We'll pay amounts any protected person is legally required to pay as damages for covered loss that:
> - results from the administration of your employee benefit plans; and
> - is caused by a wrongful act committed before the ending date of this agreement.
>
> The plan defines "administration" as meaning "only the following administrative functions:
> - Explaining or interpreting an employee benefit plan.
> - Calculating or communicating benefits and costs for an employee benefit plan.
> - Enrolling participants, or terminating participation, in an employee benefit plan.
> - Estimating or projecting future employee benefit plan values.
> - Handling or processing of employee benefit plan records."

It further defines a "wrongful act" as "any negligent act, error, or omission." The policies state that St. Paul has a right and duty to defend "any protected person against a claim or suit for loss covered by this agreement...even if any of the allegations of such claim or suit is groundless, false, or fraudulent." A "claim" means "a demand which seeks damages," and a "suit" means "a civil proceeding which seeks damages." The policies do not define "damages."

St. Paul contends that it does not have a duty to defend because the plaintiffs in the underlying litigation first made a written demand on the Village regarding payment of monies claimed by the Fund in May 1999 or, at the latest, in August 2000. Under the Policies, only those claims or suits first made or brought while the Policies are in effect are covered. The Polices were in effect from February 1, 2001 until February 1, 2003. They did not cover the period prior to February 1, 2001. An insurer is entitled to summary judgment if the claim for which the insured seeks coverage was made prior to the inception of the policy. *Int'l Ins. Co. v. Peabody Int'l Corp.*, 747 F. Supp. 477, 480 (N.D. Ill. 1990). The Village denies that the written demand to make a $4 million contribution to the Fund to offset underfunding constituted a "claim" as defined in the Policies. The written demand letter in August 2000, allegedly requested an

additional contribution from a Municipal Utility User Tax surplus. It did not seek compensation over and above the monies allegedly due to the Fund. But St. Paul argues that the underlying plaintiffs' efforts to get the matter of legal action against the Village put on the Pension Board's agenda put the Village on notice of a probable claim no later than 2000.

The Underlying Plaintiffs contend that they sought to put the matter of possible legal action against the Village on the Pension Board agenda on several occasions. Each time, the Village attorney objected. The Village thus was aware of the allegations that it had withheld monies owed by law to the Fund. Further, it was aware or reasonably should have been aware that legal action of some sort was contemplated against it as early as 1999. The Village contends, however, that a demand for payment of monies collected did not constitute a "claim" under the Policies and therefore the Village had no prior knowledge of a potential claim nor any duty to notify St. Paul of a potential claim against it. In fact, the Policies do not refer to "legal action" in their definition of a "claim" or "suit." Instead, the Policies state that they cover claims or suit for "damages." From the facts alleged and the evidence in the record, the written demands do not appear to constitute "damages." They were, instead, demands for payments of monies allegedly owed by law. This Court does not find, based on this record, that the demands and threat of potential legal action constituted "claims" or demands for "damages" as defined by the Policies.

But the Village then contends that the Underlying Complaint *does* constitute a claim for damages under the Policies. Specifically, the Village argues that all of the complaints in the underlying litigation do seek "damages" beyond declaratory, injunctive or non-monetary relief and thus, are covered by the Policies. Specifically, the underlying plaintiffs demand attorneys' fees and court costs. This argument fails. Although there is no question that attorney's fees and

costs represent money damages, they are not available except as an ancillary to other claims–for legal or equitable damages. Here, the plaintiffs in the underlying litigation seek only equitable relief, to which they have appended the rote request for fees and costs. If the Village's interpretation was correct, then an insurer could never deny coverage, even for claims that failed to come within miles of the policy's coverage, as long as the claimant sought attorney's fees and costs. The Village's position would require this Court to read both the Illinois and federal case law as meaningless surplusage because it would be only a foolish plaintiff who failed to requests fees and costs in addition to equitable relief. *See, e.g., Gen'l Star Indemnity Co. v. Lake Bluff Sch. Dist. No. 65*, 819 N.E.2d 784, 792-93 (Ill. App. Ct. 2004).

This Court therefore must determine whether the Village's alleged underfunding of the Fund was "administrative" and covered by the Policies. The parties agree that pension plans are covered as employee benefits plans by the Policies. According to St. Paul, the Village's alleged underfunding does not fall within the coverage for administrative functions under the Policies. The Village predictably disagrees, contending that its funding decisions fall under "estimating or projecting future employee plan values" or "calculating or communicating benefits and costs for an employee benefit plan." Therefore, the Village argues that the underlying complaints fall at least potentially within the scope of the policy. This Court agrees. The statute regulating the pension fund for firefighters states:

> The city council or the board of trustees of the municipality shall annually levy a tax upon all the taxable property of the municipality at the rate on the dollar which will produce an amount which, when added to the deductions from the salaries or wages of firefighters and revenues available from other sources, will equal a sum sufficient to meet the annual actuarial requirements of the pension fund, as determined by an enrolled actuary employed by the Illinois Department of Insurance or by an enrolled actuary retained by the pension fund or municipality.

40 Ill. Comp. Stat. § 5/4-118(a). The language directs the municipality annually to levy a tax, but leaves the amount of that tax to the municipality to calculate, based upon the actuarial requirements of the fund and the contributions received from the firefighters and other sources. The Policies provide coverage for "calculating ... benefits and costs" of a covered plan. This language contemplates some discretionary, decision-making activities. Construing the language of the Policies in favor of the insured, as this Court must when deciding the insured's motion for summary judgment, this Court finds that the claims of the underlying litigation potentially–but only barely–fall within the ambit of the Policies' coverage. This Court makes no comment on the amount of discretion granted to a municipality under the statute. Illinois law is clear, however, that the duty to defend arises when at least one theory of recovery alleged in the underlying litigation falls within the potential coverage of the policy. *Wilkin*, 578 N.E.2d at 930. As such, St. Paul had a duty to defend the Village in the underlying litigation.

But this does not end the inquiry. St. Paul contends that even if it is found to have a duty to defend, there are exclusionary clauses which take the underlying litigation outside the scope of coverage. Having found a duty to defend, this Court next must address the Village's contention that because St Paul refused to defend the Village in the underlying suit and waited two years and ten months before filing this declaratory judgment action, it is estopped from denying coverage or raising any policy conditions or other defenses to coverage. The Seventh Circuit has held that under Illinois law, when an insured tenders a claim to its insurer for defense on a claim the insurer believes is beyond the scope of the policy's coverage, the insurer may 1) seek a declaratory judgment relieving it of the duty to defend; 2) defend the insured but reserve all rights under the policy; and 3) do nothing but risk a finding that it breached its duty to defend,

which would require the insurer to indemnify the insured for any liability incurred in the underlying action. *Roman Catholic Diocese of Springfield*, 139 F.3d at 565-66 (citing *Maneikis v. St. Paul Ins. Co. of Ill.*, 655 F.2d 818, 821-22). "The estoppel that the insurer risks when it elects to do nothing is an estoppel to deny coverage if it turns out that the insurance company did have an obligation to defend and breached that obligation." *Id.* at 566 (citing *Hartford Accident & Indem. Co. v. Gult Ins. Co.*, 776 F.2d 1380, 1382-83 (7th Cir. 1985)). But the court asked to determine whether the insurer breached its duty to defend must first decide whether such a duty existed in the first place. *Id.* (citations omitted).

But St. Paul did not elect to do "nothing." Instead, St. Paul denied coverage to the Village and, almost three years later, brought a declaratory judgment action in federal court, seeking approval of its action. There is no dispute that the Village tendered the original underlying complaint to St. Paul on February 21, 2002. St. Paul responded by telephone and fax on or about March 8, 2002, informing the Village that its preliminary opinion was that the suit was not covered by the St. Paul Policies. On May 16, 2002, St. Paul sent a written letter to the Village, in which it formally denied coverage and set forth the basis for its denial and expressly reserved its rights under the policy. The Village, through its counsel, responded on October 14, 2002, with a written demand that St. Paul provide a defense and likewise reserved its policy rights. The next communication between the parties, according to the record, was a letter from St. Paul to the Village, dated July 23, 2004, which set forth further justifications for St. Paul's denial of coverage. St. Paul additionally demanded that the Village withdraw its tender to St. Paul with respect to the second amended verified complaint in the underlying action. If the Village failed to do so, St. Paul would "take the appropriate action." Based on the record, it does not appear

that the Village ever responded to St. Paul's supplemental denial of coverage letter. This declaratory judgment action was filed on December 23, 2004. St. Paul offers no explanation for the twenty-one month delay between the Village's October 2002 letter and its July 2004 reply. Instead, St. Paul argues that the underlying action was only in its preliminary stages as of the time it filed its motion for summary judgment–apparently implying that the Village was not prejudiced by St. Paul's delay in filing a declaratory judgment action. But that misunderstands the law. The rate at which the underlying action proceeds is irrelevant to the determination of whether an insurer has a duty to defend. *See, e.g., Korte Constr. Co. v. Am. States Ins. Co.*, 750 N.E.2d 764, 769-70 (Ill. App. Ct. 2001). Indeed, a case that requires multiple amended complaints over a several year period could well be more burdensome than a case that proceeds rapidly from initial filing to final resolution. The difference depends not on the speed at which the case proceeds but whether the insured must bear the burden of mounting its own defense when its insurer, rightly or wrongly, refuses to do so.

The Village contends that St. Paul's delay in filing this suit for declaratory judgment runs counter to settled law and constitutes an "abandonment" of St. Paul's insured. But the Village's statement of "settled law" adds an emphasis that is not present in the case law from which the Village claims it derives. Specifically, the Village contends that an insurer, faced with a tender of a claim from an insured, must either defend the suit under a reservation of rights or deny coverage and *promptly* file a declaratory judgment action seeking a ruling that there is no coverage. But the two cases on which the Village relies do not use word "promptly" anywhere. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134-35 (Ill. 1999); *Korte Constr. Co.*, 750 N.E.2d at 768-770. In *Korte Construction*, the plaintiff, an additional

insured under a commercial general liability policy, sought a declaratory judgment that the insurer had a duty to defend against a wrongful death suit. The plaintiff repeatedly asked the insurer to defend it; the insurer refused and did nothing more. A year after the underlying wrongful death suit was filed against the plaintiff construction company, it brought a declaratory judgment action against the insurer. Only then, as an affirmative defense, did the insurer seek a declaratory judgment that it had no duty to defend the plaintiff. The Illinois Appellate Court, reviewing a grant of summary judgment to the plaintiff, held that "the insurer must take some action to adjudicate the issue of coverage or undertake to defend the insured under a reservation of rights, and it must take that action within a reasonable time of a demand by the insured," and therefore the insurer was estopped from denying coverage. *Korte*, 750 N.E.2d at 770. The court continued, "When an insured tenders to an insurer the defense of the underlying cause, the insurer may not simply refuse to participate in the litigation of the underlying cause and wait for the insured to institute litigation against the insurer to determine the insurer's respective rights and duties." *Id*. (citing *Shell Oil Co. v. AC & S, Inc.*, 649 N.E.2d 946, 949-50 (Ill. App. Ct. 1995)). Illinois courts, however, have held that the "time period between notice of an underlying action and filing of a declaratory judgment action is not determinative of whether estoppel applies." *Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.*, 747 N.E.2d 955, 965 (Ill. App. Ct. 2001). "[T]he most important factor ... is not the raw chronological delay in an insurer's filing a declaratory judgment action, but whether the insurer waited until trial or settlement was imminent." *Providence Hospital v. Rollins Burdick Hunter of Illinois, Inc.*, 824 F.Supp. 131, 136 (N.D. Ill.1993) (finding that insurer was not estopped from claiming noncoverage where it filed a declaratory judgment action over one year after denying coverage because the trial of the

underlying case was several months away and the settlement was not an option at the time the declaratory action was filed). St. Paul's delayed almost three years before filing this declaratory judgment action, which pushes the limits of reasonableness almost to the breaking point, but trial of the underlying litigation is still some time away, and nothing in the record indicates that settlement is or has at any point been imminent. For these reasons, estoppel does not apply.

St. Paul contends that the exclusionary clause in its Policies regarding "known wrongful acts" supports a denial of coverage. This clause states, "We won't cover loss that results from any wrongful act that the protected person: knew about before this agreement went into effect; and could reasonably foresee would result in a claim or suit being made or brought while this agreement is in effect." The difficulty for St. Paul is that, having denied that a claim for equitable relief, such as an injunction or a verified accounting, constitutes a claim for damages under the policy, it is unable to assert that the Village could reasonably foresee that a claim or suit would be brought while the Policies were in effect. Next, St. Paul contends that the Village's acts do not fall within the Policies' definition of "wrongful act," which is "any negligent act, error, or omission." Instead, St. Paul's relies on the underlying complaints' characterization of the Village's actions as intentional and willful. The underlying plaintiffs contend that the Village failed to promptly account for and turn over to the Fund all pension taxes received from Cook County, promptly account for all other tax revenues collected for the benefit of the Fund, and set apart all pension fund tax receipts and related monies. Instead, according to the underlying plaintiffs, the Village instead commingled its operating or other municipal funds with pension

fund tax receipts and other Fund monies, in violation of its fiduciary duties to the Fund. The Village, in notably conclusory fashion, responds that the allegations in the underlying complaints "can certainly be construed as 'negligent acts, errors or omissions' that fall squarely within the definition of a wrongful act" under the Policies. (The Village's Resp. Br. at 12.) This Court is bound to construe the allegations of the underlying complaints liberally in favor of the insured. *Wilkin*, 578 N.E.2d at 930. But an insurer does not have a duty to defend if it is clear from the face of the underlying complaint that the allegations fail to state facts that would bring the claims within the coverage range of the Policies. *Id*. The underlying complaints allege that since 1997, the Village has acknowledged the monies owed to the Fund and made "formal commitments" to repay them but failed to do so. The Village's alleged repeated failure to fulfill formal commitments to transfer funds owed to the Fund does not fall within "negligent act, error or omission," as the Policies define a wrongful act. Thus, the claims are excluded from the Policies' coverage. Thus, this Court finds that St. Paul would have had a duty to defend because at least one of the theories alleged against the Village potentially fell within the scope of policy coverage. However, because St. Paul is not estopped from asserting policy defenses, and because the underlying litigation is based on intentional acts by the insured, the claim falls outside the scope of the Policies' coverage of negligent acts, errors or omissions. St. Paul therefore does not have to defend that Village in the underlying litigation.

The Village seeks to recover attorneys' fees and costs under Section 155 of the Illinois Insurance Code because it contends that St. Pauls' conduct in this matter and its refusal to defend the Village in the underlying litigation were vexatious and unreasonable. 215 Ill. Comp. Stat. 5/155 (2003). The award of attorneys' fees and costs under Section 155 is within the court's

discretion. The Village contends that St. Paul unreasonably delayed its suit for declaratory judgment, thereby forcing the Village to hire additional counsel and undertake the financial burden of its defense in the underlying litigation. But St. Paul promptly notified the Village that of its denial of coverage under the Policies. In addition, as stated above, St. Paul filed the present action before settlement or trial was imminent. Thus, this Court finds that St. Paul's conduct, although slower than desirable, was not vexatious or unreasonable under Section 155.

## Conclusion

For the foregoing reasons, St. Paul's motion for summary judgment is denied in part and granted in part. The Village's motion for summary judgment is denied. Declaratory judgment is entered for the Plaintiff. Judgment is entered for the Plaintiff and against the Defendant on the Defendant's counterclaim.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **March 31, 2006**